State v. Foust

---

STATE OF NORTH CAROLINA v. THEODORE FOUST

No. 7615SC674

(Filed 2 February 1977)

**Homicide § 21— voluntary manslaughter of child — sufficiency of evidence**
    The State's evidence was sufficient to support a verdict finding defendant guilty of voluntary manslaughter of his illegitimate nine month old son where it tended to show that defendant and the child's mother quarreled; the child was crying and defendant took the child from his bed and began to butt his head against the child's head,

saying he was "trying to make a man out of him and make him tough"; defendant then began to chop the child on the head with the side of his hand; the child stopped crying and was trying to catch his breath; defendant began to throw the child on the bed to see if he could catch his breath; defendant and the child's mother then took the child to a hospital but the child's heart stopped beating before they arrived there; there were fourteen bruises on the child's head; death was caused by a blunt force to the head with resulting hemorrhage and brain injury; and the injuries that resulted in death could not have been caused by a·fall but could have been caused by blows to the head with the side of a hand.

APPEAL by defendant from *Preston, Judge.* Judgment entered 24 March 1976 in Superior Court, ORANGE County. Heard in the Court of Appeals 18 January 1977.

Defendant was tried for murder in the second degree and was convicted of voluntary manslaughter in connection with the death of his illegitimate son, Victor Bolden, who was then nine months old. Judgment was entered imposing a twelve-year prison sentence.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Associate Attorney Acie L. Ward, for the State.*

*R. Chase Raiford, P.A., for defendant appellant.*

VAUGHN, Judge.

Defendant, in his first argument, contends that the State's evidence was insufficient to take the case to the jury. Defendant offered no evidence. Voluntary manslaughter is the unlawful killing of a person without malice and without premeditation. *State v. Kea,* 256 N.C. 492, 124 S.E. 2d 174. The State's evidence tends to show the following:

Defendant lived with Belinda Bolden and their two illegitimate children, one of whom was Victor. Victor was born on 21 January 1975, and was described as an anemic child. Late in the afternoon of 19 November 1975, defendant and Bolden began to quarrel. Defendant had been drinking and Victor was crying. Defendant took the baby from his bed and began to butt his own head against the baby's head. Bolden told defendant to stop but he refused and said that he was "trying to make a man out of him and make him tough." The quarrel continued· and defendant began to hit Bolden in the face with his fist. De-

fendant then began to "chop the baby on the head with his hand. It was with the palm of his hand. The side part of his hand." Bolden could not get the baby away from defendant. The baby stopped crying and was trying to catch his breath. Defendant began to throw the baby on the bed to see if he could catch his breath. Bolden tried to give the baby oxygen and saw a bruise in the center of his forehead. Bolden then went to the car so that she could take the baby to a hospital. Defendant attempted to pull the coil wire off the car but finally drove Bolden and the child to a hospital. The baby's heart had stopped beating before they arrived at the hospital.

On 20 November 1975, the Chief Medical Examiner of the State of North Carolina performed an autopsy on the child's body. His testimony, in pertinent part, is quoted from the record:

> "There were 13 bruises present over the forehead and upper portion of the head and both cheeks. . . . Bruises were present over the forehead area with the exception of 2 that were on the sides of the cheek, approximately to the point which I point on my own head. There was a 14th bruise at the back of the scalp back of the head. The bruises that were apparent about the face and forehead I could see on the inner surface of the scalp. There was recent fresh hemorrhage over the surface of the brain. There was also an area of old hemorrhage in the brain and there was a small area of hemorrhage adjacent to one kidney. The brain hemorrhage was that associated with the bruises to the head. Other than the head and small bruises—small hemorrhage adjacent to one kidney there were no other internal damages found. These injuries were very recent.
>
> Q. And could you pinpoint that within a matter of hours?
>
> A. Only not beyond saying that the hemorrhage of the head, that is, on the brain, could have been as long as several hours, but not longer than that. There was in addition to the fresh hemorrhage I have just been talking about an area representing old hemorrhage that I would date approximately a month, 2 months in age. In my opinion, the cause of death was from a blunt force to the head with resulting hemorrhage and brain injury. I do not believe the older injury in the head described had any part in the

death of the child. The kidney injury did not contribute to his death."

There was no objection to any of the foregoing testimony by the doctor. Over defendant's objection the doctor was allowed to testify that, in his opinion, a fall could not have caused the injuries that resulted in death and that the injuries could have been caused by blows to the head with the side of a hand.

In support of his argument on the nonsuit question, defendant appears to argue that the dead child's mother should not be believed because of the possibility of her own involvement, her earlier inconsistent statements and her concern over custody of the surviving child. Defendant further contends that the evidence is inconclusive, because it does not rule out whether the child's death was caused by an accumulation of forceful blows from other persons. He contends that the State failed to show that death resulted from the blows inflicted by defendant. The argument is without merit. On a motion for nonsuit the evidence is, of course, considered in the light most favorable to the State. The State is allowed the benefit of every reasonable inference that arises on the evidence. When so considered, the State's evidence in this case was sufficient to take the case to the jury on the murder and manslaughter charges and fully supports the verdict of guilty of voluntary manslaughter.

Defendant brings forward eight assignments of error in which he contends the court allowed the medical expert to give an opinion without a proper hypothetical question. These assignments of error fail to disclose prejudicial error. A medical expert may give his opinion on facts which he has observed during the course of his examination of the body of the deceased.

The assignments of error brought forward fail to disclose any prejudicial error.

No error.

Judges HEDRICK and CLARK concur.